## ARLINGTON HOTEL *v.* EMPLOYMENT SECURITY DIVISION, DIRECTOR OF LABOR and Nathaniel MURRAY

E 81-139                          625 S.W. 2d 551

Court of Appeals of Arkansas
Opinion delivered December 23, 1981

*House, Holmes & Jewell, P.A.*, by: *J. Bruce Cross* and *Russell Gunter*, for appellant.

*Thelma Lorenzo*, for appellee.

GEORGE K. CRACRAFT, Judge. The appellee, Nathaniel Murray, was discharged from his employment with the appellant, Arlington Hotel, on January 25, 1981. He applied for unemployment benefits which were denied by the agency on finding that he had been discharged because of misconduct in connection with his work. The Appeal Tribunal affirmed but the Board of Review reversed the determination, finding that he had been discharged for reasons other than misconduct connected with his work. Appellant appeals from that determination contending that the decision of the Board of Review is not supported by substantial evidence.

The appellant is a resort and convention hotel located in the City of Hot Springs. In connection with its operation it hosts a large number of banquets and luncheons. Appellee was employed by the appellant for several years in the capacity of banquet captain. He was responsible for scheduling employees and supervising the service of banquets held at the hotel.

Appellee's immediate superior testified that for a period of at least a month preceding his discharge, appellee had been violating the employer's rules and policies. Some of the

violations were personally observed by his superior and others were reported by other employees or patrons of the hotel. In each case the superior made a written memorandum describing the infraction and stating by whom it was noted. The original of the memorandum was placed in the appellee's personnel file and a copy placed in a box in the hotel designated for appellee's use.

The employer testified that he had seen appellee and persons under his supervision violating policies as to where they should smoke, eat or drink; that the appellee had been remiss in preparation and submission of payroll data on those persons which he supervised; that he had been observed drinking a beer on the pool deck and mixing himself a drink at a bar operated at a banquet; that he had failed to attend staff meetings; that his absence from functions over which he had charge permitted his staff to violate hotel policy to its detriment, and that he failed to wear a tie and name tag as required. The employer introduced into evidence and testified from a number of the inter-office memos addressed to the appellee. However, in all of the memoranda he was admonished to correct the problem but was not terminated as a result of any of the mentioned deficiencies.

The appellee testified that he had not received all of the memoranda mentioned by his employer, but had attempted to correct the deficiencies set forth verbally and in those memos he had received. He denied that he ever worked a banquet without a tie and stated that he had failed to wear his name tag on only one occasion while it was broken and being repaired. He denied all of the other accusations of inefficiency and infractions of the rules testified to by the employer or mentioned in the memoranda. He stated that he had been performing satisfactorily in his job.

The employer also testified that on January 25th the Hot Springs Civitan Club was to meet at the hotel for a luncheon meeting. Appellee was instructed not to engage extra waitresses but as the party was small it should be served by appellee and "Mr. Marion." The manager testified that he subsequently observed that extra help had been engaged

for that luncheon contrary to his instruction and called the appellee to his office. Prior to terminating his employment, he reminded appellee of his failure to follow instructions in the memoranda, and concluded that as appellee was "unwilling to follow company policy, he should be terminated."

With regard to the January 25th incident, appellee testified that his employer had in fact instructed him to serve the Civitan Club luncheon with only one other employee. However, he testified that the usual attendance at such meetings was fourteen people but on this date thirty-four persons attended. He testified that when he arrived in the banquet room he found that "Mr. Marion" had obtained the services of an additional waitress. He stated that he reminded him of the limiting instructions, and Mr. Marion replied that when the expected "fourteen people expanded to thirty-four, I was glad to see her come in." Appellee stated that he agreed that the extra waitress was needed and he let her continue.

On appellate review the findings of fact of the Board of Review are conclusive if supported by substantial evidence, and we must give the successful party the benefit of every inference that can be drawn from the testimony, viewing it in the light most favorable to the successful party. *Harris* v. *Daniels*, 263 Ark. 897, 567 S.W. 2d 954 (1978). Even though there is evidence upon which the Board of Review might have reached a different result, the scope of judicial review is limited to a determination of whether the Board could reasonably reach its result upon the evidence before it, and a reviewing court is not privileged to substitute its findings for those of the Board even though the court might have reached a different conclusion if it had made the original determination upon the same evidence. *Hodnett* v. *Daniels*, 271 Ark. 479, 609 S.W. 2d 172 (Ark. App. 1980).

Ark. Stat. Ann. § 81-1106 (b) (1) (Repl. 1976) provides that a claimant shall be disqualified from receiving unemployment insurance benefits if he is discharged from his last work for misconduct in connection with the work. In order for an employee's action to constitute "misconduct" so as to

disqualify him from unemployment compensation benefits, the action must consist of acts of wanton or willful disregard of the employer's interest, deliberate violation of his rules, or disregard of standards of behavior which an employer has a right to expect of his employees. *Stagecoach Motel* v. *Krause,* 267 Ark. 1093, 593 S.W. 2d 495 (Ark. App. 1980); *Brewer* v. *Everett, Director,* 3 Ark. App. 59, 621 S.W. 2d 883 (1981). Mere inefficiency, unsatisfactory conduct, failure of good performance as a result of inability or incapacity, inadvertence, ordinary negligence or good faith error in judgment are not considered misconduct for unemployment benefit purposes unless they are of such a degree of recurrence as to manifest culpability, wrongful intent, evil design or intentional disregard of an employer's interest. *Willis Johnson Co.* v. *Daniels,* 269 Ark. 795, 601 S.W. 2d 890 (Ark. App. 1980); *Brewer* v. *Everett, Director,* supra. Whether or not the acts of the employee are willful and wanton or merely result from inefficiency, unsatisfactory conduct or unintentional failure of performance, is a question of fact for the Board of Review to determine.

It is clear from the record that the precipitating cause for termination of the appellee was the incident at the Civitan Club luncheon on January 25th. If the Board of Review believed appellee's testimony that the attendance at that meeting was double that expected, and that the action he took was deemed by him to be in the best interest of his employer under the circumstances, they could reasonably find that his actions were not in willful disregard of the employer's interest. Also in its findings the Board of Review noted that there was no documentation that the memos were actually received by the appellee and that much of the content of those memoranda was based on hearsay. While hearsay can be considered by the Board of Review in connection with other evidence, it is entitled only to that weight which the Board of Review deems it worthy. The Board of Review, in the case at bar, apparently chose to believe and did base its decision on the sworn testimony of the appellee that he denied the charges of misconduct or the receipt of any warnings, either oral or in writing, and that he was doing satisfactory work for his employer.

286

When the conflicting evidence contained in the record is viewed in the light most favorable to appellee, we cannot say that the decision of the Board of Review is not supported by substantial evidence or that reasonable minds could not have reached the same conclusion.

We affirm.

GLAZE, J., concurs.

CLONINGER, J., dissents.